ERIC GRANT
United States Attorney
CHARLES CAMPBELL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900


Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>MIA F. ROBICHAUD,<br><br>      Defendant. | CASE NO.  2:25-CR-201-DJC<br><br>GOVERNMENT'S ANSWERING BRIEF<br><br><br>DATE: June 4, 2026<br>TIME: 9:00 AM<br>JUDGE: Hon. Daniel J. Calabretta |

## I.  INTRODUCTION

Defendant Mia Robichaud refused to identify herself to a law enforcement officer who was attempting to issue her a citation.  When Robichaud continued to refuse to identify herself after multiple warnings, the officer detained Robichaud and issued her both the original citation and an additional citation for criminal interference with an officer, in violation of 36 C.F.R. § 251.3(a).  After extensive motion practice, including the dismissal of the first citation, Robichaud had a bench trial in front of U.S. Magistrate Judge Dennis M. Cota.  Judge Cota found Robichaud guilty and sentenced her to perform 20 hours of community service.

Robichaud now appeals, arguing that the evidence was insufficient to support her conviction. The arguments she raises on appeal were also raised below: once in a motion to dismiss, and then again at trial.  Judge Cota rejected the arguments on both occasions, finding that her legal arguments were unfounded, and that her conviction was supported by sufficient evidence.  This Court should reach the same conclusion and affirm her conviction.

1

## II.    BACKGROUND

### A.    Context & Citation Conduct

The citation in this case arises from Robichaud's participation in the 2024 Rainbow Family Gathering, which took place in Plumas National Forest near Susanville, California.  The Rainbow Family is "a loosely structured group of people who gather at least once a year on National Forest System land to pray for peace and discuss political and environmental issues." *United States v. Linick,* 195 F.3d 538, 540 (9th Cir.1999).  Gatherings of the Rainbow Family have been held on National Forest land since at least the 1970's, *Black v. Arthur*, 18 F.Supp.2d 1127, 1130 (D. Or. 1998), generally involve large groups of individuals congregating without obtaining the necessary permits, *Linick*, 195 F.3d at 540–41, and often result in legal challenges to the resulting citations, *United States v. Adams*, 388 F.3d 708, 709 (9th Cir. 2004).

In response to threats to individuals and natural resources posed by the 2024 Rainbow Family Gathering, the Forest Supervisor for the Plumas National Forest, Chris Carlton, issued Forest Order No. 05-11-02-24-05 (the "Closure Order"), which closed specified portions of the Indian Creek Headwaters area (the "Closure Area") to public use.  *See Def. Opening Br.* (hereinafter "AOB"), Ex. 2.  Defendant Robichaud learned of the forest closure on June 26, 2024, when she was stopped by U.S. Forest Service (USFS) personnel while entering the Closure Area to participate in the Rainbow Family Gathering.  TR 234.  Despite being told that being in the Closure Area was unlawful, Robichaud remained there until July 5.  TR 234–35.  On that date, USFS Forest Officers entered the Closure Area to issue citations to members of the Rainbow Family Gathering who were in violation of the Closure Order.  TR 23–25.

Several of those officers, including Officer Ethan Caudle, encountered Robichaud and informed her that she would be receiving a citation for being within the closure area.  TR 28–31.  In order to issue the citation, the officers repeatedly asked Robichaud to identify herself.  TR 28–31.  Robichaud repeatedly refused to do so.  TR 31.  The officers warned Robichaud that if she did not provide her name, the officers would detain her and transport her to the Lassen County Jail for fingerprinting and identification.  TR 28–35.  Robichaud again refused to identify herself.  TR 28–35.  The officers then detained Robichaud and transported her to the Lassen County Jail for fingerprinting and identification.  TR 28–37.

2

Once they had identified her, the officers issued Robichaud two citations. TR 35–37. The first was Violation Notice no. 5236490, which asserted that Robichaud had violated 36 C.F.R. § 261.53(e) by remaining within the Closure Area. The second was Violation Notice no. 5236489, which asserted that Robichaud had violated 36 C.F.R. § 261.3(a) by interfering with a Forest Officer. AOB, Ex. 1. Each citation could be resolved through payment of $250 in forfeiture and a $30 processing fee. AOB, Ex. 1.

B.    **Robichaud's Motions to Dismiss**

Robichaud contested the citations and demanded a bench trial. Prior to trial, Robichaud and other Rainbow Family Gathering defendants filed a joint motion to dismiss the citations for remaining within the Closure Area. Dkt. Nos. 16, 17. The defendants made several arguments, including that the Closure Order was unconstitutional and that copies of the Closure Order had not been properly posted at locations in and around the Plumas National Forest.[1] Dkt. No. 16. The government opposed the motion. Dkt. No. 19. After briefing and oral argument, Magistrate Judge Cota found that the government had failed to show that the Closure Order was posted in compliance with USFS regulations. Dkt. No 21. Accordingly, the court dismissed the § 261.53(e) citations with prejudice. Dkt. No. 21. Judge Cota did not make any ruling on whether the Closure Order violated the U.S. Constitution. *See* Dkt. No. 21, *see also* TR 64 (trial court explaining that its "determination in granting the motion was merely that the Government had failed to offer sufficient evidence that it was a valid order," which was "distinct from it being an invalid order.").

Robichaud then filed a motion to dismiss her § 261.3(a) citation for interference with a forest officer. Dkt. No. 23. In that motion, Robichaud argued that, because the Closure Order was unenforceable, her refusal to cooperate in the enforcement of the order could not constitute criminal interference. Dkt. No. 23. The government again opposed dismissal. Dkt. No. 24. After briefing and oral argument, Judge Cota denied the motion without prejudice and the case proceeded to trial. Dkt. No 26.

//

---

[1] Robichaud acknowledged that she was aware of the Closure Order; her claim was that USFS had nonetheless failed to post the Closure Order in a manner which satisfied the requirements of 36 C.F.R. § 261.50.

3

C.      **Trial**

On August 8, 2025, the parties met in at the U.S. District Courthouse in Redding, California, for trial.  Dkt. No. 53.  The government called Forest Officer Ethan Caudle as its only witness.  TR 12–60. FO Caudle testified that, several days before the events at issue in this case, USFS had issued a Closure Order which prohibited the public from entering into or remaining within the Indian Creek Headwaters area.  AOB, Ex. 2.  On July 5, 2024, FO Caudle and other USFS employees entered the closure area with instructions to issue citations to persons they encountered therein.  TR 23–24.  Shortly after entering the closure area, FO Caudle and his partner encountered Robichaud and attempted to issue her a citation.  TR 28, 30.

FO Caudle explained that, to issue someone a citation, officers need to know what the person's name is.  TR 17.  The citation form itself contains a blank area where the cited person's name needs to go, and if that information isn't filled in, then the citation is invalid.  TR 17.  As FO Caudle put it, without a name to put on the citation, USFS would "have no way [of] identifying or sending that citation to" the cited person, and that person "wouldn't be able to show up to court."  TR 17.

On July 5, when FO Caudle and his partner attempted to issue Robichaud a citation, she refused to identify herself.  TR 31.  This refusal prevented the officers from issuing Robichaud the citation.  TR 34.  The officers then explained to Robichaud that, if she didn't identify herself, they would be required to detain her and transport her to be fingerprinted, at which point they would issue her both a citation for remaining in the closure area and an additional citation for interfering with a forest officer.  TR 28–34. Robichaud still refused to identify herself.  TR 34.  As a result, the officers detained her, transported her to be fingerprinted, and then issued her both a citation for remaining in the closure area and an additional citation for interfering with a forest officer.  TR 35–37.

The defense then called six witnesses, including Robichaud herself.  *See* TR 70–241.  Most of this testimony was directed at events which occurred before July 5 and was elicited to support a defense theory that the Closure Order was unconstitutional.  *See* TR 72–74.

At the close of trial, Judge Cota rejected the defense's theory.  TR 250–52.  The court found Robichaud guilty of interference with a forest officer, in violation of 36 C.F.R. § 261.3(a), and ordered her to perform 20 hours of community service.  TR 256.  The imposition of the sentence was stayed

4

pending the outcome of the appeal.

### III.    ARGUMENT

#### A.    Robichaud's conviction is supported by sufficient evidence.

"The applicable standard for reviewing the sufficiency of the evidence to support a criminal conviction is whether, 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Arbo*, 691 F.2d 862, 866 (9th Cir. 1982) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  This inquiry "does not require a court to ask itself whether *it* believes that the evidence at the trial established guilty beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19 (internal quotation marks omitted) (emphasis in original).

At trial, the defendant was convicted of interfering with a Forest Officer in violation of 36 C.F.R. § 261.3(a).  That subsection prohibits "[t]hreatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System."  As applied to this case, the offense has two elements: (1) that, on or about July 5, 2024, the Defendant threatened, resisted, intimidated, or interfered with a Forest Officer; (2) on account of, or while said Forest Officer was engaged in, the performance of the Officer's official duties.  *See Gov. Trial Br.*, Dkt. No. 47, at 3; *accord* TR 251 ("the charge before the Court of interference does, indeed, consist of two elements, whether the forest officers were performing an official duty and whether there was interference with that duty.").  In this context, to "interfere" is "to oppose, intervene, hinder, or prevent.'" *United States v. Willfong*, 274 F.3d 1297, 1301 (9th Cir. 2001) (citing WEBSTER'S NEW WORLD DICTIONARY 704 (3d College ed. 1998)).

The evidence which the government introduced at trial to support its burden was straightforward.[2]  FO Caudle testified that, while performing their duties as USFS employees, he and other officers had encountered Robichaud within the Closure Area and attempted to issue her a citation.

---

[2] With regards to the events which made up the government's case in chief, the evidence was also largely uncontested.  When Robichaud testified, she acknowledged that she had met FO Caudle and the other officers, that she had refused to identify herself, that they had explained the consequences of her refusal, and that she had continued to refuse to identify herself even after being detained.  *See* TR 220–38.

TR 22–30.  In response, Robichaud refused to identify herself.  TR 30–32.  FO Caudle explained that this refusal prevented the officers from issuing Robichaud the citation.  TR 17–22.  The officers explained to Robichaud that she had to identify herself, and that if she didn't, she would be detained, taken for fingerprinting, and then issued both the original citation and an additional citation for interference.  TR 31–37.  After Robichaud continued to refuse, she was detained and cited for interference.  TR 31–37.

Robichaud does not contest on appeal that the officers were acting within the scope of their official duties when they attempted to issue her a citation for remaining in the closure area.  By refusing to provide her name, Robichaud prevented the officers from issuing her that citation, and so interfered with the exercise of the officers' official duties.  This evidence is sufficient to prove that Robichaud committed the crime of interference, in violation of 36 C.F.R. § 261.3(a).  *See United States v. Buehler*, 793 F.Supp. 971, 975 (E.D. Wash. 1992) (upholding Title 36 interference citation issued for failure to identify when ordered by National Park Service Ranger).

The trial court's decision shows that it assessed the evidence in much the same way.  Reading his order from the bench, Magistrate Judge Cota found that "the forest officers were, in fact, performing an official duty, acting in response to the closure order."  TR 250.  This satisfies the first element of the charge.  Judge Cota also found that there was "no ambiguity in the instructions provided by the officers" when they "approached and asked the defendant to identify herself, and [then] explained in detail the consequences of failing to identify herself."  TR 251.  As a result, Robichaud's "refusal to obey an order that was being appropriately enforced… created a violation in the form of the resistance."  TR 252.  This satisfies the second element of the offense.

The evidence that the government introduced at trial proved both elements of the offense beyond a reasonable doubt.  The trial court did not err in convicting the defendant of interfering with a forest officer in violation of 36 C.F.R. § 261.3.

**B.**      **The trial court correctly held that Robichaud's refusal to identify constituted interference.**

Robichaud argues that her refusal to identify herself cannot, as a matter of law, constitute interference.  AOB 14.  This argument relies on the U.S. Supreme Court's holding in *District of*

6

*Columbia v. Little*, 339 U.S. 1 (1950). AOB 14–17. This reliance is misplaced.

            1.      *Little* is both legally and factually differentiable.

*Little* concerned a D.C. regulation which required the occupants of residences to "keep them 'clean and wholesome.'" *Little*, 339 U.S. at 5 (citing D.C. Commissioners' Regulations Concerning the Use and Occupancy of Buildings and Grounds § 2 (1922). The regulation further provided that Health Officers "shall examine or cause to be examined any building supposed or reported to be in an unsanitary condition, and make a record of such examination." D.C. Comm. Reg. § 10. Any person "interfering with or preventing any inspection authorized thereby, shall… be punished by a fine of not less than $5 nor more than $45." *Id.* § 12.

The events in *Little* were straightforward. A Health Officer had arrived at Little's residence for a surprise inspection to find the door locked and Little away. *Little*, 339 U.S. at 5. With no way of entering the residence to inspect it, the officer waited for Little to return. *Id.* When Little arrived, the officer demanded that Little unlock her door and permit a search. *Id.* Little refused to do so, claiming that the officer's "entry would violate her constitutional rights." *Id.* The officer then issued her a citation for interference under § 12.

On appeal, Little's arguments centered on whether the warrantless searches apparently authorized by the regulation violated the Fourth Amendment. *Id.* at 3. But the Court found it "unnecessary to decide whether the Fourth Amendment required a search warrant," and instead resolved the case on grounds of statutory interpretation. *Id.* at 4.

The Court found that the regulation at issue did not "impose any duty on home owners to assist health officers to enter and inspect their homes." *Id.* at 6. Of equal importance, the regulation "does not even prohibit hindering or refusing to permit any lawful inspection," which the Court noted was "in sharp contrast with a separate inspection statute… which adds these phrases to prohibitions against interference and prevention." *Id.* (internal quotation marks omitted). As a result, Little's "mere refusal to unlock the door accompanied by remonstrances on substantial constitutional grounds" did not constitute interference." *Id.* at 5–6.

This case is both legally and factually differentiable from *Little*. The legal difference stems from the language of the two interference statutes. The regulation in *Little* did not prohibit "hindering" or

"refusing to permit any lawful inspection." When read in contrast with a similar statute which did include those prohibitions, the broader prohibition on "interference" did not support a conviction when the act of interference amounted to, at most, hindering and refusing to permit an inspection.

The language of § 261.3 is not so limited. *See Willfong*, 274 F.3d at 1301 (defining interfering as "to oppose, intervene, hinder, or prevent." (internal quotation marks omitted)). In fact, the comparable companion regulation to § 261.3, § 261.1, expands the scope of "interference." *See* 36 C.F.R. § 261.1(a)(1) ("The prohibitions in this part apply… when… [a]n act or omission occurs in the National Forest System."). This language "clearly indicates that the prohibitions covered in the regulations are broad." *Willfong*, 274 F.3d at 1302 (discussing an interference citation under 36 C.F.R. § 261.3(a)). So, unlike in *Little*, whether Robichaud's "refusal to obey the… order is classified as an act or omission… it was prohibited by the regulations." *Id*.

The factual difference springs from the legal one. In *Little*, the regulation did not impose any duty upon Little to comply with the Health Officer's orders. This distinction is crucial. Where the exercise of an officer's duty does not require a person to comply with an order, the refusal to comply with said order does not interfere with the officer's duty. But here, the exercise of the officers' duty required issuing Robichaud a citation, and that in turn required Robichaud to provide the officers her name. Under these circumstances, her refusal to comply with the order to identify directly prevented the officers from carrying out their duty. Robichaud's brief acknowledges this distinction, stating that "were she not being cited for violating a closure order… Robichaud would not have been obliged to give her name to the officers." AOB at 16. This admission resolves the issue: Robichaud *was* being cited for violating a closure order, and so she *was* obliged to give her name to the officers.

### 2.    Courts have upheld interference citations on similar facts.

Courts in the Ninth Circuit have upheld this interpretation of the interference statute, and they have likewise upheld interference citations issued on similar facts. In *Willfong*, a forest officer ordered Willfong to shut down an illegal logging operation. 274 F.3d at 1299. Willfong refused to do so and was cited for interference under the same statute at issue here. *Id.*

The Ninth Circuit upheld the citation, and its reasoning rested on the duty to act created by the Forest Officer's order. The officer's "ability to execute the shut down order depended on Willfong and

his crew taking affirmative steps to cease operations." *Id*. at 1301. By refusing to act, Willfong "did not merely do nothing," but actively interfered with the officer's duty. *Id.*; *see also United States v. Arbo*, 691 F.2d 862 (upholding citation for interference when defendant refused to allow officers to inspect a mining operation).

The *Willfong* court also rejected the argument that *Little* prevented a citation being issued for a passive refusal. *Id.* Robichaud argues on appeal that the distinction between *Little* and *Willfong* is that Little asserted a constitutional right and Willfong did not. AOB at 16–17. But this misreads both cases. *Little*'s holding explicitly avoided the issue of whether there was a genuine 4th Amendment right at stake. *Little*, 339 U.S. at 6–7. That case's mention of constitutional rights is thus dicta. *Id.* And *Willfong*'s holding focuses on the affirmative nature of the refusal to act, not the lack of Constitutional remonstrances. *Willfong*, at 1301–02 ("If Willfong disagreed with [the officer's] order, he had the right to try to get it rectified. He did not have the right to interfere with the officer's enforcement of it.").

In *Buehler*, the Eastern District of Washington upheld an interference citation on almost identical facts. In that case, a National Park Ranger approached a fisherman and asked to see his fishing license. *Buehler*, 793 F.Supp. at 972. Buehler refused to produce the license or any other form of identification, later explaining that "he felt he was being harassed." *Id.* at 975. The District Court upheld the resulting citation for interfering with an officer, finding that Buehler's "subjective belief he was excused from producing his fishing license… is of no moment. It was not reasonable to refuse to identify himself to the ranger," and his refusal was "sufficient evidence he specifically intended to interfere with the ranger's official duty." *Id.* *Buehler* also rejected the argument that "interference cannot be predicated on a refusal to cooperate or provide information," on the grounds that Buehler's "refusal to provide identification interfered with the ranger's duty of issuing the citation that required [Buehler's] correct name and address." *Id.*

Finally, in *United States v. Cortesi*, 2008 WL 4966754 (E.D. Cal. 2008), a court in this district affirmed a conviction for interference based on a failure to identify, and in so doing explicitly rejected arguments that this refusal was constitutionally protected. The facts in *Cortesi* are similar to those in *Buehler* and in the instant case: a National Park Service Ranger ordered Cortesi to identify himself, and Cortesi refused. *Id*. at *1. The Ranger repeated the order five times, explaining that he was

investigating Cortesi for a crime. *Id.* When Cortesi still refused, he was arrested and cited for interference. On appeal, Cortesi argued that "he was under no lawful order to identify himself." *Id.* at *2. This argument was unsuccessful: the district court found that the Ranger's order to identify did not violate the Fourth or Fifth Amendments, and that Cortesi's "repeated refusal to provide identification… violated 36 C.F.R. § 2.32(a)(1), because it interfered with [the Ranger's] official duty of investigating the reported disturbance." *Id.*; *see also* 36 C.F.R. § 2.32(a)(1) (defining interference as "[t]hreatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty, or on account of the performance of an official duty.").

In sum, the trial court correctly held that Robichaud's refusal to identify herself constituted interference. The evidence introduced at trial showed that the officers' duty required Robichaud to identify herself, and that her repeated refusals to do so prevented the officers from discharging their duty. Robichaud's claim that her constitutional remonstrances prevent her interference from being treated as such are unsupported, and the trial court correctly rejected them.

### IV.    CONCLUSION

For the foregoing reasons, this Court should uphold Robichaud's conviction.

Dated:  May 4, 2026                                    ERIC GRANT
                                                       United States Attorney


                                              By:  /s/ CHARLES CAMPBELL
                                                   CHARLES CAMPBELL
                                                   Assistant United States Attorney